## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN MARKS, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>ANDERSEN WINDOWS, INC. and ANDERSEN CORPORATION,<br><br>     Defendants. | Case No. 1:14-cv-10171<br><br><br>**CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Plaintiff Alan Marks ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned counsel, files this Class Action Complaint (the "Complaint") against Defendants Andersen Windows, Inc. and Andersen Corporation (together, "Andersen" or "Defendants").  In support hereof, Plaintiff alleges upon personal knowledge as to himself and his own acts, and, as to all other matters, upon information and belief, as follows:

## I.  NATURE OF ACTION

1.  This is an action for breach of contract, breach of express warranty, breach of implied warranties, violation of Massachusetts' consumer protection laws, fraudulent concealment, negligent misrepresentation, and negligence, arising from Andersen's design, marketing, sale, distribution, and manufacture of defectively designed and/or manufactured 400 Series Tilt Wash vinyl-clad windows despite its knowledge of the defects, problems and malfunctions of the window systems.

2.  Plaintiff brings this consumer class action against Andersen on behalf of all

persons and entities who own homes or other structures located in the Commonwealth of Massachusetts in which a 400 Series Tilt Wash vinyl-clad window manufactured or sold by Defendants was installed.  The 400 Series Tilt Wash vinyl-clad windows (hereinafter the "Class Windows") contain a design and/or manufacturing defect that allows moisture intrusion which promotes an elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure in the window system under normal conditions.

3.     Andersen knew that these defects were present in the Class Windows, but it knowingly and/or recklessly misrepresented to Plaintiff and the Class that the Class Windows were free from defects, were fit for their ordinary purposes, and took no action to adequately warn Plaintiff and the Class or appropriately remedy the defects.  Instead, Andersen concealed and failed to warn that the Class Windows promoted an elevated moisture content and mold growth, and accelerated or promoted premature rotting, decay, deterioration and overall failure, and that these problems were caused by the design and/or manufacturing defect(s).

4.     At all relevant times, Andersen marketed and sold the Class Windows as being free of defects.  Andersen was aware that the Class Windows were defective, yet failed to take affirmative steps to advise its customers of the defective and substandard condition of the Class Windows.  This action seeks all appropriate relief arising from Andersen's unlawful acts.

5.     As a result of the defective nature of the Class Windows, it is believed that thousands of customers in Massachusetts have experienced or will experience similar damage to their Class Windows and adjacent framing walls and siding, as well as to other parts of their property, all of which will cause an ascertainable loss due to the defective product causing the premature failure, rot, and deterioration of the Class Windows.  The damage caused by these defects is substantial, including thousands of dollars in materials and labor to remove the Class

Windows, install new windows, and to replace and repair related items, including, without limitation, fitted blinds, valances, shades, drapes, and curtains, and to repair all other damage to the home caused by the Class Windows and from replacing and repairing walls, studs, siding, and trim associated with replacing the Class Windows.

6.      Had Plaintiff and the Class known about these design and/or manufacturing defects at the time of purchase, they would not have purchased the Class Windows, or would have had an opportunity to negotiate a lower purchase price for the Class Windows, or could have negotiated to have the Class Windows replaced before or in conjunction with purchasing the structure containing the Class Windows.

7.      As a result of Andersen's acts and omissions alleged herein, Plaintiff and the Class have suffered ascertainable harm, including, without limitation, the costs to replace the Class Windows, labor costs to remove and install new windows, and costs to repair or replace the surrounding areas of the home affected by the Class Windows.

## II.      JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiff and a vast majority of Class members are of diverse citizenship from Defendants and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, *et seq.* because the property that is the subject of this action is situated in this District, substantial events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants regularly transact business in this District and are subject to personal jurisdiction in this District.

## III.      PARTIES

10.     Plaintiff Alan Marks ("Plaintiff") is a resident and citizen of Hull, Massachusetts.

Plaintiff purchased Class Windows that have been installed in his home.

11.     Defendant Andersen Windows, Inc. is a Minnesota corporation with its headquarters and principal place of business in Bayport, Minnesota.  Andersen is the world's largest manufacturer of wood windows, patio doors, and storm doors, with estimated annual sales of $2.5 billion.  It does business in the Commonwealth of Massachusetts and this District, and committed the acts alleged herein, thus causing damage within the Commonwealth of Massachusetts.

12.     Defendant Andersen Corporation is a Minnesota corporation with its headquarters and principal place of business in Bayport, Minnesota.  Andersen is the world's largest manufacturer of wood windows, patio doors, and storm doors, with estimated annual sales of $2.5 billion.  It does business in the Commonwealth of Massachusetts and this District, and committed the acts alleged herein, thus causing damage within the Commonwealth of Massachusetts.

13.     Andersen Windows, Inc. and Andersen Corporation are collectively referred to herein as "Defendants" or "Andersen."

### IV.     SUBSTANTIVE ALLEGATIONS

**A.     Plaintiff's Experience with the Class Windows**

14.     In or about July 2004, Plaintiff selected Andersen windows for use in remodeling his house.  The Class Windows were delivered to Plaintiff's home in or about October 2004.  The Class Windows were installed in Plaintiff's home by a professional contractor in the early summer of 2005 and are currently still affixed to the home.

15.     In or about the winter of 2010-2011, Plaintiff noticed a significant amount of condensation on his Class Windows.

16.     In 2012, Plaintiff witnessed a worsening condensation issue with his Class Windows in colder temperatures.  He also noticed dark spots and mold in and around the window and sash.  During windy weather, Plaintiff could hear the windows rattle and "crackle" and feel cold air passing through the glass window panes.  Plaintiff contacted Andersen and was told that his house had a humidity and condensation problem; however, Andersen had never inspected Plaintiff's house.

17.     In January 2013, Plaintiff contacted Andersen again to file a formal warranty claim because Plaintiff had concluded at this time that his Class Windows were defective. Andersen again advised Plaintiff that the problem was not his Class Windows but rather was the humidity level in Plaintiff's house, which Andersen's warranty did not cover.  The Andersen representative also advised Plaintiff that he would have to pay a fee for Andersen to inspect the Class Windows.

18.     On January 21, 2013, at 7:27 a.m., Mr. Marks sent an email to Andersen Corporation attaching photos of his defective Class Windows.

19.     On January 21, 2013, at 4:20 p.m., Mr. Marks sent an email to Andersen Corporation, stating:

> I would like an email so as to confirm whether you will honor my warranty claim and if not the reason why. I am also quite willing to have a service representative inspect the windows. I will not pay a fee for this inspection. I should not have to pay for your company to determine whether it should honor its warranty coverage.

20.     Plaintiff then spoke again with an Andersen representative who informed Plaintiff that "You're not the only one having problems."  Plaintiff subsequently requested that Andersen confirm this fact in writing, but Andersen refused to do so.  Instead, Andersen advised Plaintiff that Andersen would not schedule an inspection without his first providing his credit card, and

repeatedly tried to sell Plaintiff new windows.

21.     On January 24, 2013, at 2:29 p.m., Plaintiff sent an email to Andersen

Corporation in which he said: :

> My Anderson windows are not working properly. The windows have condensation on them which either my wife or myself have to wipe down on a daily basis. The mold on the windows is progressively becoming a health hazard to my wife who is asthmatic. The windows are also beginning to show signs of rot to the wood.
>
> When I spoke with John he indicated by the model number the windows are indeed Anderson. He also stated there may be a problem with this type of window.
>
> I feel that these windows should be inspected by your company free of charge. If this is not the case I feel that you are not honoring your warranty.

22.     At no time, however, was Plaintiff advised by Andersen that the windows suffered

from a manufacturing or design defect.

23.     To date, Andersen has refused to replace any of Plaintiff's defective Class

Windows, and has continually denied that there is any problem or defect with the Class

Windows.  Plaintiff still has the Class Windows installed in his home and they are continuing to

fail and show evidence of the defects complained of herein.

24.     Additionally, in January 2014, Plaintiff observed that his Class Windows were

leaking in water from the outside and that such water was puddling up between the panes of his

Class Windows.

25.     These failures of the Class Windows have caused damage to Plaintiff's Class

Windows as well as to other areas of Plaintiff's home.  The design of the Class Windows

exposes the internal wood to elevated moisture content and to mold growth thereby accelerating

and promoting premature rotting, decay, and deterioration.

26.     The defects in the Class Windows that allow moisture penetration and increased

moisture absorption were present in the Class Windows when they left Andersen's factory, and were part of the design and manufacture of the Class Windows.

27.    The design characteristics and manufacturing methods used by Andersen to produce the Class Windows have resulted in ascertainable loss and damages suffered by Plaintiff and the Class.

28.    The following represents just a small sampling of internet postings by consumers who have suffered damages resulting from the Class Windows, reflecting their frustrations and concerns with the Class Windows [*sic* throughout]:

a)    "I purchased several defective 400 series tilt wash double hung, vinyl clad windows on June 29th, 2006. The windows would collect condensation at the point in which the two pieces meets (below the latch). I notice this did not happen on the non 400 series panes through out the house. Eventually mold and even fungus appeared. It would return as soon as it was wiped off. I had to throw out the trim and wood blinds. I contacted Andersen several times and filed warranties without even a confirmation. When contacting them via phone I was passed from message service to message service.

I did some research and was told once again my home had high humidity. I had a contractor test my house's, circulation, ventalation, and humidity and all was well within code standards. I searched for others and found them. Many insisted it was still humidity. I soon found out that the people who had similar breakdown had purchased the same model within months of my own purchase and from the Minnesota location. … I have a daughter on the way and now I'll be forced to pay for all replacements on my own and on a fixed income. I'm at wits end and out of options. I welcome all help and info." (posted 1/3/13 on ripoffreport.com)

b)    "I recently attempted to get warranty service on my Andersen windows which were installed in my newly constructed house only seven years ago. Since the first winter, the windows have leaked air which caused terrible moisture build up which led to mold growth. My builder said that this would eventually go away as the house ages, well its only gotten worse! When I contacted Andersen, they told me that my windows were still under warranty,

but the problem I have is not their issue, I have too much humidity in the house! I run a dehumidifier, so I know that it is not the problem. I just want to warn everyone who is considering new construction, to avoid choosing Andersen windows as they will not honor their warranty on their inferior windows! Buyer beware."
(posted 2/11/13 on complaintsboard.com)

c)     "I spent a small fortune in 2000 with Andersen Windows on a new home built the same year. I just found [1/13/13] that 10 of the double hung windows in the home had rot on the inside wood-not the outside-all in the lower left corner of the lower sash. I contacted Andersen today to find out that the windows were manufactured in 1999 and therefore their warranty on the windows is only ten year-20 years on the glass- therefore there is no fix for these rotting windows other than to replace them at my cost. There seems to be a multitude of complaints on the net about rotting Andersen windows…. I have Andersen casement windows and they are not rotting and they work fine. The double hung windows are essentially junk and all in the same location. The other writings on the net indicate that the problem is how the window is constructed in allowing a water leak from the outside into the inside and therefore the rot occurring on the inside and not on the outside. The people at Andersen are polite but of no help."
(posted 1/14/13 on complaintsboard.com)

d)     "Our Andersen windows are only 6 years old. They totally ice over in the winter. We have had Andersen reps come out and look at them and like the other people who have complained, we were told also that the reason is that our house is too air tight. This is their standard line that they give so that they will not have to honor the warranty. They will also try and tell you it is the screens on the windows, or the type of curtains that you have, or that there is too much humidity in the house. Our humidity is 5 percent, had it checked. Our neighbors have screens on their windows, and the same type of curtains, but have no problems, but they have Marvin windows. They used to be quality suppliers but something has gone wrong and they are doing everything they can to get out of replacing them. They will even send you a CD to watch explaining how it is not the windows but all of these other issues such as 2 X 6 construction, vapor barriers, screens on windows, types of curtains, humidity levels in the home, improper installation, ect. ect. ect. I have noticed that some of the local contractors who used Andersen windows in the past, are switching to other manufactures, GO FIGURE"
(posted 12/4/09 on complaintsboard.com)

29.    Plaintiff believes that there are thousands of Class members whose homes and other structures incorporate the defective Class Windows and who have observed and experienced the same defects that are described herein.

30.    Plaintiff believes that Andersen has received hundreds or thousands of warranty claims alleging a defect in the Class Windows.  Despite receiving a litany of complaints from consumers (including Plaintiff) Andersen has not notified consumers about the defects, and has refused to fully repair damage caused by the premature failure of its product.

31.    The only true fix for the Class Windows is their removal and replacement which will require adjustment and resizing from the current window size, and will cause damage to the structure including, without limitation, to the walls, studs, siding, and trim.  Additionally, mold, rot, or other damage caused to the adjacent or adjoining areas of the structure will have to be cleaned or remediated.

32.    As a result of these design and/or manufacturing defects inherent in the Class Windows at the time they left Andersen's manufacturing facilities, Plaintiff and the Class have and will incur ascertainable damages including, without limitation, the cost of materials to replace each window in their home, labor costs to replace the Class Windows, and labor costs and materials to repair any additional damages to the home caused by the Class Windows and the replacement of the Class Windows.

**B.**    **Defendants' Manufacture and Sale of the Class Windows**

33.    Defendants are engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing windows and doors throughout the United States, including in the Commonwealth of Massachusetts.

34.    Defendants tout their Andersen 400 Series windows with the following marketing slogan: "Traditional craftsmanship. Timeless design. Time-proven performance."

35.     Andersen's website boasts the performance expectations of Andersen's 400 Series windows, stating that "Andersen® 400 Series products have been tested to extremes, going from temperatures duplicating the cold of Alaska winters to the heat of Death Valley summers, three times a day, day after day. They came through it all beautifully."  *See* Exhibit 1.

36.     Andersen specifically represents that the Class Windows are "extremely energy efficient," and that the Class Windows' "[d]ual-layer, compressible bulb weatherstripping seals out dust, wind and water."  *See* Exhibit 2.

37.     Andersen has consistently used its website as a marketing tool for the Class Windows.   In June 2004, for example, the Andersen website contained the following representations:

a)      "For exceptionally long-lasting performance, sill members are constructed with a solid wood core and Fibrex™ composite material exterior."

b)      "Weatherstripping throughout the unit provides a long-lasting, energy-efficient, weather-repellant seal."

c)      "Wood sash members are treated with a water-repellant wood preservative for long-lasting protection and performance."

d)      "A rigid vinyl or CPVC glazing bead with a flexible lip, combined with silicone glazing, provides superior weathertightness and durability."

e)      "With its traditional styling and state-of-the-art technology, Andersen® 400 Series tilt-wash double-hung windows give homes the beauty of natural wood interiors, weathertight performance and a long-lasting, low maintenance exterior."

f)      "The classic Andersen® blend of engineering and craftsmanship, the 400 Series features extensive sizes, shapes and styles -- each designed to perform to the highest standards -- and each with a full array of options and accessories."

g)      "We stand by our products, and the people who use them. Our limited warranty is known throughout the industry as one of the most comprehensive and reliable product backing policies

available."

h)      "Andersen products feature a 20-year limited warranty on glass and a 10-year limited warranty on non-glass parts. The limited warranty is non-prorated and fully transferable, so it stays intact even if the home changes ownership."

*See* Exhibit 3.

38.     Defendants manufacture windows at their facilities in Minnesota, Wisconsin and elsewhere.

39.     Upon information and belief, Andersen's manufacturing process at one time involved dip-treating its products in a wood preservative.  At some point in time, Andersen stopped applying such preservative to the Class Windows.

40.     Andersen was negligent in the design and manufacture of the Class Windows for a number of reasons, including that the Class Windows do not seal properly.  This lack of a proper seal promotes and elevates moisture content and mold growth, and thereby accelerates and promotes rotting, decay, deterioration, and overall failure.

41.     Andersen knew or should have known that the foregoing defects made the Class Windows susceptible to premature failure under normal conditions.

42.     Andersen failed to disclose to Plaintiff and the Class that the Class Windows would fail because of the defects alleged herein, and that the defect might not exhibit itself until after the warranty period, and that if the latent defect did not exhibit itself until after the warranty period expired, Andersen was not committed to repair it.

43.     Although Andersen was aware of the defective condition of the Class Windows manufactured without the preservative treatment, it failed to publicize the defective condition of the Class Windows or take affirmative steps to notify its customers that the Class Windows would fail, be subject to moisture penetration, to the growth of mold and fungus, and to rot

prematurely. Upon information and belief, Andersen could identify the customers who had purchased the Class Windows and many of the structures in which the Class Windows were installed.

44. Andersen's failure to disclose the defective condition alleged in detail herein has made it impossible for the Class to discover the defective nature of the Class Windows. The defective nature of the Class Windows promotes moisture penetration, the growth of mold and fungus, premature rot, and causes damage to take place inside the vinyl-clad window frame system. Andersen's failure to control moisture penetration, elevated moisture, decay, and mold growth within the vinyl-clad wood frame of the Class Windows exposes other parts of the Class Window system and home to excessive damage.

45. Defendants have concealed the truth about the Class Windows from their customers whose windows have not yet rotted, so these customers have received no notice or warning of the latent defects in the Class Windows. Moreover, based upon this active concealment, customers whose Class Windows experienced premature rot and deterioration received no notice that the rot was caused by a latent defect in the window. Andersen's affirmative acts and omissions have prevented or delayed customers' discovery of the Class Window defect, and thus, have tolled any and all statutes of limitation.

46. Andersen knew, before it sold the Class Windows to Plaintiff and the Class, of the defects in the Class Windows detailed herein, and that there was a substantial risk that the Class Windows would prematurely fail as a result. Andersen failed to disclose that risk and deprived consumers of the opportunity to negotiate additional warranty coverage, negotiate a lower price to reflect the risk, or simply avoid the risk altogether by purchasing a different manufacturer's windows or requesting that a different manufacturer's windows be installed

before or in conjunction with the purchase of the structure.

47.     Consumers in Massachusetts reasonably expect: a) that their windows will not prematurely fail due to defective design and manufacturing processes; b) that if Andersen knew that it had an inherent defect in its Class Windows, that it would disclose the problem; and c) that if Andersen knew that it had an inherent defect in its Class Windows, it would repair the defect even if the defect did not exhibit itself during the warranty period.

48.     Andersen was aware of the defect in the Class Windows before Plaintiff purchased his Class Windows.

## V.     CLASS ALLEGATIONS

49.     Plaintiff brings this action individually and on behalf of the following class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3):

> All individuals and entities that own homes or other structures located in the Commonwealth of Massachusetts, in which a 400 Series Tilt Wash vinyl clad window manufactured or sold by Andersen Windows, Inc. or Andersen Corporation has been installed (the "Class").  Excluded from the Class are Andersen Windows, Inc. and Andersen Corporation, any entity in which they have a controlling interest or which has a controlling interest in them, and their legal representatives, assigns and successors.  Also excluded from the Class are any judicial officers or employees of the Court who are involved in this action in any way.

50.     Plaintiff reserves the right to redefine the Class prior to class certification.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  While the precise number of Class members is unknown at this time, it may be determined from the records maintained by Andersen and/or its dealers.  Plaintiff believes that the Class numbers in the thousands.

52.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and all Class members were similarly affected by Andersen's wrongful conduct as set

forth herein.  Plaintiff and each Class member purchased, had installed, and/or have acquired homes with the Class Windows, which are uniformly subject to elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure. Plaintiff and the Class have sustained similar damages, resulting from the design and/or manufacturing defects complained of herein, including, without limitation, the cost of materials to replace each window in their home, labor costs to replace the same, and labor costs and materials to repair any additional damages to the home.

53.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in class action and consumer fraud litigation.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.  Plaintiff and his counsel are aware of no conflicts of interest between Plaintiff and other members of the Class.

54.     Andersen has acted or refused to act on grounds that apply to the entire Class such that final injunctive or declaratory relief is appropriate.  Specifically, Plaintiff requests that a declaratory and injunctive relief class be certified based upon the following grounds:

     a.     All Class Windows manufactured from 1999 until the present have defects which cause them to fail and leak, resulting in mold and water damage to the property and the necessity of the removal and replacement of the Class Windows;

     b.     All Class Windows manufactured from 1999 until the present have defects in workmanship and material that causes failures;

     c.     Andersen knew of the defects in the Class Windows and that the limitations contained in its purported limited warranties are

14

unenforceable;

d.      Andersen has represented that the Class Windows have characteristics, uses, and benefits which they do not have;

e.      Andersen has represented that the Class Windows are of a particular standard, quality, or grade when they are of an inferior grade;

f.      Andersen shall re-audit and reassess all prior warranty claims concerning the Class Windows, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

g.      Andersen shall establish an inspection program and protocol to be communicated to Class members, which will require Andersen to inspect, upon request, a Class member's windows to determine whether the Class Windows have failed.

55.     There are numerous questions of fact and law common to Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members, including, without limitation:

a.      whether the Class Windows are defective;

b.      whether the Class Windows were designed and/or manufactured with gaps between the frame members, thus causing their defect;

c.      whether the Class Windows are predisposed to elevated moisture content and mold growth, accelerated and premature rotting, decay, deterioration, and overall failure as a result of the design and/or manufacturing defects;

d.      whether Andersen knew or should have known of the defective nature of the Class Windows prior to putting them into the stream of commerce for

purchase by Plaintiff and the Class;

e.      whether Andersen properly advised consumers about the likelihood of the
        Class Windows' premature failure;

f.      whether Andersen owed a duty to Plaintiff and the Class to exercise
        reasonable and ordinary care in the design, manufacture, warranting,
        marketing, and sale of the Class Windows;

g.      whether Andersen breached its duty to Plaintiff and the Class by
        designing, manufacturing, warranting, marketing, and selling to Plaintiff
        and the Class defective Class Windows and by failing promptly to remove
        the Class Windows from the marketplace or take other remedial action;

h.      whether the Class Windows fail to perform in accordance with the
        reasonable expectations of ordinary consumers;

i.      whether the Class Windows fail to perform as advertised, marketed and
        warranted;

j.      whether Andersen knowingly failed to disclose, instruct, and warn of the
        design and/or manufacturing defect with the intent that others rely upon
        such concealment, suppression or omission;

k.      whether Andersen intentionally or recklessly misrepresented the quality
        and material facts of its Class Windows in an effort to sell the Class
        Windows to the Plaintiff and the Class;

l.      whether Andersen knew or became aware that its Class Windows were
        defective and subject to premature deterioration and failure, yet continued
        to manufacture, distribute, advertise and market the Class Windows while

directly or indirectly concealing the defects from the Class;

m.     whether Andersen used misrepresentations, intentional omissions, or unconscionable commercial practices in connection with the sale of the Class Windows;

n.     whether Plaintiff and Class members are entitled to injunctive relief compelling Andersen to recall, inspect as necessary, effectively repair and/or replace the design and/or manufacturing defects and remedy the resultant problems from elevated moisture content and mold growth, accelerated and premature rotting, decay, deterioration, and overall failure;

o.     whether Plaintiff and Class members are entitled to damages representing the ascertainable loss of money and/or property that have been and/or will be suffered by Plaintiff and Class members as a result of the design and/or manufacturing defects;

p.     whether Andersen should be declared financially responsible for notifying Class members of the defective nature of the Class Windows and to pay for the costs of repair and replacement of all such Class Windows;

q.     whether Andersen, through its written advertising and representations to Class members, directly or indirectly created express or implied warranties;

r.     whether Andersen breached its express warranties to Plaintiff and the Class by advertising, marketing and selling defective Class Windows to Plaintiff and the Class;

s.     whether Andersen breached its implied warranties to Plaintiff and the

Class by advertising, marketing and selling defective Class Windows to Plaintiff and the Class that were not of a merchantable quality, nor fit for the ordinary purpose for which they were sold;

t.  whether Andersen engaged in unlawful, deceptive, and/or misleading conduct, as alleged;

u.  whether Andersen was unjustly enriched by its misrepresentations and breaches of express and implied warranties;

v.  whether Andersen has a duty to disclose to consumers material facts concerning the serious problems and damage that would inevitably result from their inherently defective Class Windows;

w.  whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages for the removal and replacement of the defective Class Windows; and

x.  whether Andersen should be required to notify all Class members about their defective Class Windows.

56.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable.  Given the common design and/or manufacturing defects present in all Class windows, and the uniform misrepresentations and omissions to the Class, Plaintiff is not aware of any difficulties in managing the action as a class action.

57.  The prosecution of separate actions can create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Andersen.  Furthermore, as the damages suffered by

individual Class members may be relatively small, the expense and burden of individual litigation make it difficult and oftentimes uneconomical for Class members to individually redress the wrongs done to them.

58.     Notice to the Class may be accomplished cheaply, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written and/or published notices, and based on Andersen's own records and the records of its distributors in the Commonwealth of Massachusetts.

## VI.     FRAUDULENT CONCEALMENT AND TOLLING OF STATUTES OF LIMITATIONS

59.     Andersen knew or reasonably should have known that the Class Windows were defective prior to the time of sale, and intentionally concealed that material information from Plaintiff and the general public, while continually marketing the Class Windows as a dependable product.  Andersen's acts of fraudulent concealment include, without limitation, the failure to disclose that the Class Windows were defectively manufactured and would deteriorate in less than their expected lifetime, leading to damage to the properties on which the Class Windows were installed.

60.     Because the defects in the Class Windows are latent and not detectable until manifestation, Class members could not reasonably discover that their Class Windows were defective until after installation, despite the exercise of due diligence.  At the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Class Windows to their own testing, modeling or analysis.

61.     In addition, Plaintiff and Class members were impeded from discovering the defective nature of the Class Windows because of Andersen's affirmative acts of concealment regarding the inherent defects of its Class Windows and the corresponding affirmative

misrepresentations of material fact contained in its marketing materials regarding the exemplary nature and premier long-term durability of the Class Windows.

62.     Furthermore, Plaintiff believes that Andersen has adopted a uniform and standardized set of obfuscating responses to Class members who attempt to invoke warranty coverage and who seek to hold Andersen responsible for its defective Class Windows. Specifically, agents of Andersen have falsely asserted to Plaintiff that the problems he was experiencing with his Class Windows were the result of humidity problems in his house.  Such representations serve to attempt to conceal the truth concerning the true nature of the defective Class Windows.

63.     At all times, Andersen had a duty to disclose to Plaintiff and the Class that the Class Windows were defective, prone to foreseeable and uniform problems, and were inherently flawed in their design and/or manufacture, and were not suitable for use for their intended purpose.

64.     Andersen actively concealed the fact that the Class Windows were defective and caused damage.  Andersen took affirmative steps to prevent Plaintiff and the Class from learning about the defective nature of the Class Windows, including keeping their internal knowledge and communications about the Class Windows secret and non-public.

65.     As set forth above, Andersen repeatedly told Plaintiff that the source of his damages was not the Class Windows but rather the humidity levels in his house.  As such, Plaintiff did not discover that the Class Windows were, in truth, defective.

66.     At all times, Plaintiff exercised reasonable diligence under the circumstances, but was unable, given Andersen's concealment, to discover the defective nature of the Class Windows and the wrongful conduct of the Andersen.

67.     As a direct and proximate result of Andersen's fraudulent concealment, Plaintiff and the Class sustained damages as set forth herein.  Indeed, Andersen's concealment caused a delay in discovering the defective nature of the Class Windows, which allowed the damage to continue and worsen, when, if the truth had been revealed, such damage could have been addressed and further damage prevented.

68.     As a further direct and proximate result of Andersen's fraudulent concealment, Plaintiff and the Class were unable to discover their injuries or learn of their cause of action. Consequently, under the doctrine of equitable tolling, the statute of limitations for each claim alleged in this Complaint did not begin to run until that date.

## VII.   CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AND OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

69.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

70.     For good and valuable consideration given, Andersen entered express or implied contracts for the sale of goods with Plaintiff and the Class and their successors in interest which contracts include a covenant of good faith and fair dealing under Massachusetts law.

71.     In manufacturing and selling the defective Class Windows, Andersen breached the terms of its contracts with the Plaintiff and the Class, including the implied covenant of good faith and fair dealing for a window that was expected to last as long as other window systems that could have been installed.

72.     As a direct and proximate result of the aforementioned wrongful conduct committed by Andersen, Plaintiff and the Class have suffered and will continue to suffer

damages and economic loss in an amount to be proven at trial.  Plaintiff and Class members are entitled to damages and injunctive and declaratory relief as set forth below.

73.     In the event that the contracts at issue do not provide an adequate remedy at law (or, if Andersen contends that the contract is in any way inapplicable to the resolution of the claims set forth herein), Plaintiff and Class members are entitled, in the alternative,  to  equitable relief, including restitution, under the doctrine of unjust enrichment, for having conferred a benefit (the cost of the Class Windows) upon Andersen, which was accepted, who then failed to provide the bargained-for non-defective Windows, rendering it unjust for Andersen to retain such benefit.

## COUNT II
## BREACH OF EXPRESS WARRANTY

74.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

75.     Andersen provided an express limited warranty at the time of sale.

76.     The express limited warranty provided that glass in the Class Windows would be free from defects for twenty (20) years, and that the non-glass portions of the Class Windows would be free from defects for ten (10) years.

77.     Andersen also made express warranties that go beyond the limited warranty that it relies on when processing warranty claims.  Andersen also created express warranties in product brochures (including on Andersen's website), product specifications, product packaging, builder guides, and installation manuals.

78.     Andersen breached its express warranties in that the Class Windows, which were susceptible to moisture penetration and subsequent damage, contained a latent defect at the time of sale, and failed to perform as expressly represented by Andersen. Further, Andersen has

failed and refused to honor the terms of the express limited warranty causing the express limited warranty to fail of its essential purpose, even though Andersen knows the Class Windows are defective.

79.     Plaintiff and the Class have suffered direct and consequential damages due to Andersen's breach of its express warranties because the Class Windows were not merchantable or fit for their particular purpose and have resulted in actual damage including premature wood rot which has caused Plaintiff and the Class to incur expense and lost time, which continues and will continue into the future in an amount to be proven at trial.  Plaintiff and Class members are entitled to damages and injunctive and declaratory relief as set forth below.

**COUNT III**
**BREACH OF IMPLIED WARRANTIES**

80.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

81.     Mass Gen. Laws Ann. Ch. 106, §§ 2–314 – 318 (Uniform Commercial Code) provides for implied warranties of merchantability and fitness for a particular purpose.

82.     Andersen breached the implied warranty of merchantability in that the Class Windows are defective and not fit for the ordinary purposes for which they are used; that is, to provide durable, long-lasting, suitable protection and use for the owners of the structures in which they are installed.

83.     Andersen breached the implied warranty of fitness for a particular purpose in that the Class Windows are defective and not fit for the ordinary purpose for which they are used; that is, to provide durable, long-lasting, suitable protection and use for the owners of the structures in which they are installed.

84.     Andersen was aware of the particular purpose for which the Class Windows were

intended and had reason to know that Plaintiff and the Class or their successors in interest relied upon Andersen's skill, judgment, and reputation to furnish the Class Windows. Plaintiff and the Class did in fact rely on Andersen's skill and judgment in this regard.

85.     Plaintiff and the Class have suffered direct and consequential damages because the Class Windows were not merchantable or fit for their particular purpose and have resulted in actual damage including premature wood rot which has caused and will cause Plaintiff and the Class to incur expense and lost time, which continues and will continue into the future in an amount to be proven at trial. Plaintiff and the Class are entitled to damages and injunctive and declaratory relief as set forth below.

## COUNT IV
## UNJUST ENRICHMENT

86.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

87.     Plaintiff and the Class have conferred substantial benefits on Andersen by purchasing the Class Windows, and Andersen knowingly and willingly accepted and enjoyed these benefits.

88.     Andersen knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Class Windows would perform as represented and warranted. For Andersen to retain the benefit of the payments under these circumstances is inequitable.

89.     Andersen, through its deliberate misrepresentations or omissions in connection with its advertising, marketing, promotion, and sale of the Class Windows, reaped benefits, which resulted in Andersen's wrongful receipt of monies received in connection with the Class Windows.

90.     Equity demands disgorgement of Andersen's ill-gotten gains.  Andersen will be unjustly enriched unless it is ordered to disgorge the monies it received in connection with its sale of the Class Windows for the benefit of Plaintiff and the Class.

91.     As a direct and proximate cause of Andersen's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Andersen in connection with its sale of the Class Windows.

**COUNT V**

**NEGLIGENCE**

92.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

93.     Andersen owed Plaintiff and the Class or their successors in interest a duty to exercise ordinary care in designing, manufacturing, warning, marketing and selling the Class Windows.  Andersen failed to exercise ordinary care in designing, manufacturing, warning, marketing, and selling the Class Windows in a manner which a reasonably prudent window manufacturer would have exercised in the same or similar circumstances, and was negligent in one or more of the following ways:

    a.     In designing the Class Windows so that they were subject to elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure;

    b.     In designing the Class Windows so that they were resistant to elevated moisture content by sealing vinyl-clad members to thereby prevent the exposure of the internal wood frame from the elements;

c.    Failing to warn (a duty which is continuing) or instruct Plaintiff and the Class of these defects and resulting failures of the Class Windows;

d.    Failing to take precautions that a reasonable person would have exercised in presenting the Class Windows to the end users; and

e.    Failing to adequately test the Class Windows to determine if they were susceptible to elevated moisture content and mold growth, accelerated and premature rotting, decay and deterioration, and overall failure.

94.    Plaintiff and the Class were not aware of the defective nature of the Class Windows when they purchased the product.

95.    Plaintiff and the Class were damaged as a result of the negligent acts or omissions of Andersen as set forth in an amount to be proven at trial.  Plaintiff and the Class are entitled to damages and injunctive and declaratory relief as set forth below.

**COUNT VI**
**DECLARATORY AND INJUNCTIVE RELIEF**

96.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

97.    Plaintiff, individually and on behalf of the Class, seeks a Court declaration of the following:

a.    All Class Windows manufactured from 1999 to the present have defects which cause them to fail and leak, resulting in mold and water damage to the property and the necessity of the removal and replacement of the Class Windows;

b.    All Class Windows manufactured from 1999 to the present have defects in workmanship and material that causes failures;

    c.        Andersen knew of the defects in the Class Windows and that the limitations contained in its purported limited warranties are unenforceable;

    d.        Andersen has represented that the Class Windows have characteristics, uses, and benefits which they do not have;

    e.        Andersen has represented that the Class Windows are of a particular standard, quality, or grade when they are of another;

    f.        Andersen shall re-audit and reassess all prior warranty claims on the Class Windows, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

    g.        Andersen shall establish an inspection program and protocol to be communicated to Plaintiff and the Class, which will require it to inspect, upon request, a Class member's Class Windows.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, requests that the Court grant the following relief:

A.        Enter the declaratory and injunctive relief as set forth above;

B.        Enter an order certifying the proposed Class, designating Plaintiff as the class representative, and appointing the undersigned counsel as class counsel;

C.        Declare Defendants financially responsible for identifying all Class members and notifying them of the defective nature of their Class Windows;

D.        Award economic, compensatory, statutory, exemplary, and punitive damages in favor of Plaintiff and the Class against Defendants for all damages sustained as a result of

Andersen's wrongdoing in an amount to be determined at trial, including interest thereon;

E.      Order Defendants to replace the defective windows and pay all expenses, including supplies, labor, and a redecorating allowance or, in the alternative, pay damages to Plaintiff and Class members in an amount sufficient to reimburse the current full replacement cost of all defective windows, including paying for costs of labor and redecoration, and enjoin Defendants from further deceptive advertising, marketing, distribution, or sales practices with respect to the Class Windows;

F.      Require Defendants to account for, disgorge and/or pay in damages to Plaintiff and the Class the amounts by which Andersen was unjustly enriched due to their wrongful conduct;

G.      Award pre-judgment and post-judgment interest at the maximum rate allowable by law;

H.      Award the Class costs and attorneys' fees against Defendants as allowed by law, and/or awarding Class counsel attorneys' fee from the common fund created hereby; and

I.      Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues so triable.

Dated:  January 23, 2014                    By his attorneys,


                                             **/s/ Edward F. Haber**
                                             Edward F. Haber BBO# 215620
                                             Adam M. Stewart BBO# 661090
                                             Shapiro Haber & Urmy LLP
                                             53 State Street
                                             Boston, Massachusetts 02109
                                             617-439-3939

617-439-0134 ((fax)
ehaber@shulaw.com
astewart@shulaw.com

OF COUNSEL:
Lawrence Deutsch
Shanon J. Carson
Jacob M. Polakoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
ldeutsch@bm.net
scarson@bm.net
jpolakoff@bm.net